IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-10211
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VALENTINO GARCIA GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
(3:90-CR-256-H)
_____

Dedember 17, 1998

Before JOLLY, SMITH, and Wiener, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Valentino Garcia Gonzalez appeals from the
district court's denial of his motion filed pursuant to 28 U.S.C.
§ 2255, to vacate, set aside, or correct his sentence.  The sole
issue in this appeal is whether a sufficient factual basis exists
to support Gonzalez's guilty-plea conviction for "using and
carrying" a firearm during and in relation to a drug trafficking
crime in violation of 18 U.S.C. § 924(c)(1).  As shall be seen,
this case like so many others of its kind, rises or falls on the

_____

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

intensive factual situation that provides the framework for the decision. For the reasons set forth below, we affirm the district court's denial of relief under Section 2255, grounding our decision in the conclusion that the discrete facts and reasonable inferences therefrom support the finding that Gonzalez "carried" the firearm in question within the meaning of Section 924(c)(1).

## I.

## FACTS AND PROCEEDINGS

Gonzalez was charged in a two-count indictment with possession of heroin with intent to distribute (Count 1) and using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count 2). Gonzalez pleaded guilty to Count 2 pursuant to a written plea agreement. The district court sentenced Gonzalez to 60 months' imprisonment, three years' supervised release, and a $50 special assessment.

After Gonzalez had been released from prison, the government filed a motion to revoke his supervised release. Thereafter, in April 1996, the district court held a revocation hearing and determined that Gonzalez had violated conditions of his release. In May of that year, Gonzalez filed a motion pursuant to 28 U.S.C. § 2255, challenging his conviction in light of the Supreme Court's decision in Bailey v. United States.[1] The district court agreed to defer Gonzalez's sentencing on the supervised-release violations until after Gonzalez's § 2255 motion was resolved.

---

[1] 516 U.S. 137 (1995).

Concluding that sufficient evidence supported Gonzalez's firearms conviction, a magistrate judge recommended that the § 2255 motion be denied. The magistrate judge did not indicate whether Gonzalez's conviction was being sustained under the "use" prong or the "carry" prong. The district court adopted the magistrate judge's findings, conclusions, and recommendations, over Gonzalez's objections. The court later sentenced Gonzalez to 18 months' imprisonment for his supervised-release violations. Gonzalez filed an application for a certificate of appealability (COA) to appeal the denial of his § 2255 motion, which the district court granted, and Gonzalez timely filed a notice of appeal.

A judge of this court then held Gonzalez's appeal in abeyance and ordered the parties to file the transcripts of the guilty plea and sentencing hearings. Our colleague also ordered the parties to file supplemental briefs addressing the precise facts relied on by the district court, as evidenced by the transcripts, in establishing the factual basis for Gonzalez's guilty plea. The parties supplemented the record with the appropriate transcripts and submitted supplemental briefs in accordance with that order.

## II.

## ANALYSIS

Gonzalez argues that there is an insufficient factual basis to support his § 924(c)(1) conviction in light of the Supreme Court's decision in Bailey. According to Gonzalez, the factual basis supporting his guilty plea fails to show that he either "used" or

3

"carried" a firearm. He maintains that the factual basis establishes nothing more than the "inert presence" of a gun.

We review the denial of a § 2255 motion under two standards.[2] Although the district court's conclusions of law are reviewed de novo, that court's factual finding that there is an adequate factual basis for a plea is reviewed only for clear error.[3]

Rule 11 requires a district court to make "such inquiry as shall satisfy it that there is a factual basis for the plea."[4] "The factual basis must appear in the record and must be sufficiently specific to allow the court to determine if the defendant's conduct was within the ambit of that defined as criminal."[5] "Relief from a formal or technical violation of Rule 11 is not available in a § 2255 collateral attack, but instead is available only upon a showing of prejudice."[6] Gonzalez would be prejudiced if he entered a guilty plea to a crime which, based on facts in the record, he did not commit.[7]

Section 924(c)(1) is violated whenever a defendant "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm." In Bailey, the Supreme Court

---

[2] United States v. Sanders, 157 F.3d 302, 304 (5th Cir. 1998).

[3] Id.

[4] Fed. R. Crim. P. 11(f).

[5] United States v. Carter, 117 F.3d 262, 264 (5th Cir. 1997).

[6] Id.

[7] See id.

held that a conviction under the "use" prong of § 924(c)(1) "requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense."[8] Baily does not affect the meaning of "carry" under § 924(c)(1).

A. Procedural bar

Gonzalez did not file a direct criminal appeal. The government maintains that, inasmuch as Gonzalez failed to challenge the validity of his guilty plea on direct appeal, his Bailey claim is procedurally barred under Bousley v. United States.[9] The failure to challenge the validity of his guilty plea on direct review ordinarily would preclude Gonzalez from bringing this collateral action absent a showing of either (1) cause and actual prejudice or (2) actual innocence.[10] The government, however, failed to raise the issue of procedural bar in the district court.[11] Accordingly, the government has waived the issue.[12]

---

[8] 516 U.S. at 143.

[9] 118 S. Ct. 1604 (1998).

[10] Id. at 1611.

[11] Rather than arguing that Gonzalez's Bailey claim was procedurally barred, the government conceded the retroactive application of Bailey in Gonzalez's § 2255 proceeding.

[12] See United States v. Drobny, 955 F.2d 990, 995 (5th Cir. 1992), which appears to have remained unaffected by Bousley. In Bousley, the government invoked the procedural bar in the district court. See Bousley v. Brooks, 97 F.3d 284, 287 (8th Cir. 1996). We have applied Bousley in three published opinions. See United States v. Thompson, 158 F.3d 223, 225-26 (5th Cir. 1998); Sanders, 157 F.3d at 305-06; United States v. Sorrells, 145 F.3d 744, 749-51 (5th Cir. 1998). It is unclear in those cases, however, whether the government invoked the procedural bar in the district court.

B.  Factual Basis

Gonzalez stipulated to the following facts in his plea agreement:

> 1.  On or about May 4, 1990, in the Fort Worth Division of the Northern District of Texas, **VALENTINO GARCIA GONZALEZ**, defendant, did knowingly use and carry a firearm, namely, an AMT, Backup, .380 caliber/9 mm, pistol, serial number AA1468, during and in relation to a drug trafficking crime, namely, the knowing possession of heroin, a Schedule I controlled substance, with intent to distribute, a crime for which he may be prosecuted in a court of the United States.
>
> 2.  On May 4, 1990, Fort Worth police officers obtained an [sic] a warrant for the arrest of GONZALEZ for the offense of attempted murder.  That same day, these officers located GONZALEZ at a motel located on Jacksboro Highway in Fort Worth, Texas.  Upon entry into the motel room occupied by GONZALEZ, officers discovered numerous small balloons containing heroin.  The officers also found scales, numerous gelatin capsules, three bottles of lactose, used as a narcotic cutting agent, a mobile telephone, two bullet proof vests, and a police scanner. GONZALEZ knowingly possessed this heroin with intent to distribute it.  Near the numerous balloons containing heroin, the officers discovered the above described loaded handgun which belonged to GONZALEZ.

The prosecutor read the stipulated facts at Gonzalez's rearraignment as the factual basis for the guilty plea.  Gonzalez agreed that the prosecutor's factual recitation was correct.

In further support of the factual basis for Gonzalez's guilty plea, the government urges reliance on facts in Gonzalez's PSR and factual findings of the magistrate judge.  According to the PSR,

---

In at least two recent unpublished (and thus unprecedential) opinions, we have proceeded to the merits of a Bailey claim after concluding that the government had waived the issue of procedural bar by failing to raise it in the district court.  See United States v. Granados, No. 97-50240, slip op. at 2 (5th Cir. Nov. 20, 1998)(unpublished); United States v. Green, No. 97-30012, slip op. at 2 (5th Cir. Aug. 31, 1998).

6

Gonzalez told police officers after his arrest that "he had thought about going for his gun when the officers entered the room." The PSR also indicated that two other individuals were in the motel room with Gonzalez and that the gun was on a dresser "in close proximity to Gonzalez." The magistrate judge made additional factual findings, which were subsequently adopted by the district court; specifically, that the gun was in plain view and that the gun was "easily accessible" to Gonzalez "[g]iven the close confines of a motel room."

The record reflects that the magistrate judge relied on facts in the PSR in determining whether a sufficient factual basis existed for Gonzalez's guilty plea. The record also reflects that Gonzales, rather than objecting to the magistrate judge's factual findings, agreed with them. As the magistrate judge relied on information in the PSR, and as Gonzales did not object to the magistrate judge's factual findings, we may consider the information in the PSR and the magistrate judge's factual findings in determining whether a sufficient factual basis supports Gonzalez's guilty plea.[13]

C.  "Use"

The government has conceded that, in light of Bailey, there is not a sufficient factual basis to support Gonzalez's conviction

_____

[13]    See United States v. Wainuskis, 138 F.3d 183, 185-86, 188 (5th Cir. 1998); see also United States v. Adams, 961 F.2d 505, 512-13 (5th Cir. 1992)(in a direct criminal appeal, this court may look to whole record, including the PSR, to determine whether district court's failure to establish adequate factual basis amounted to harmless error).

under the "use" prong of § 924(c)(1).  Still, an argument could be made that Gonzalez did in fact "use" the firearm because the firearm was located near him in plain view.[14]  Nevertheless, the Supreme Court's decision in <u>Bailey</u> and our post-<u>Baily</u> decisions support the government's concession that the factual basis fails to establish "use."[15]

D.  "Carry"

As Gonzalez pleaded guilty to an indictment stating that he "did knowingly use and carry a firearm," his conviction may still be upheld if the "carry" prong of § 924(c)(1) is satisfied.[16] <u>Bailey</u> did not address the "carry" prong of § 924(c)(1), so it had no effect on our "carry" jurisprudence.[17]  In a nonvehicle context, a conviction under the "carry" prong of § 924(c)(1) "requires both

---

[14]  <u>See</u> <u>Bailey</u>, 516 U.S. at 148 (noting that "use" encompasses "the silent but obvious and forceful presence of a gun on a table"); <u>Wainuskis</u>, 138 F.3d at 188-89 & n.18 (affirming defendant's § 924(c)(1) conviction on alternative grounds of aiding and abetting based on evidence that agents saw a codefendant "seated in the kitchen with a gun visible next to him on a stool and another loaded weapon visible within arm's reach").

[15]  <u>See</u> <u>Bailey</u>, 516 U.S. at 149 ("mere possession of a firearm by a drug offender, at or near the site of a drug crime or its proceeds or paraphernalia," does not constitute "use" under § 924(c)(1)); <u>United States v. Hall</u>, 110 F.3d 1155, 1160-61 (5th Cir. 1997)(although officers found defendant in living room of mobile home and a firearm on the floor of that same room, factual basis failed to show that defendant "used" firearm because facts did not indicate that defendant disclosed, displayed, mentioned, or actively employed the firearm in any way); <u>cf.</u> <u>United States v. Johnson</u>, 87 F.3d 133, 137-38 (5th Cir. 1996)(concluding that defendant "used" firearm by reaching for gun in his vehicle which was clearly visible to apprehending officers).

[16]  <u>See</u> <u>Sanders</u>, 157 F.3d at 304.

[17]  <u>See</u> <u>Wainuskis</u>, 138 F.3d at 186.

that the weapon be moved in some fashion and that it be within arm's reach (readily accessible)."[18]

The facts we consider today are somewhat analogous to those we addressed in United States v. Hall.[19] The defendant in Hall was arrested inside a mobile home in which both drugs and firearms were found.[20] When the agents entered the mobile home, the defendant and another individual were in the living room where there was a large quantity of cocaine.[21] The cocaine was located, among other places, on a coffee table in the living room.[22] A handgun was on the floor within a few feet of the living-room coffee table.[23] The defendant's factual basis established that the handgun was "readily available to the occupants of the trailer" and was "easily accessible to protect the drugs, the drug proceeds, and to protect the drug trafficking operation."[24]

After concluding that the defendant's conviction could not stand under the "use" prong of § 924(c)(1), we turned to the "carry" prong.[25] We noted that the factual basis was deficient in

---

[18]    Id. at 187.

[19]    110 F.3d 1155 (5th Cir. 1997).

[20]    Id. at 1157-58.

[21]    Id. at 1157.

[22]    Id.

[23]    Id. at 1158.

[24]    Id.

[25]    See id. at 1159-61.

several respects.[26]  First, the factual basis failed to indicate that the defendant (1) transported the handgun, (2) had it on his person or in his clothing, or (3) would have been able to reach it.[27]  Second, the factual basis failed to indicate the spatial arrangement of the defendant and the other individual in the living room "with respect to the gun, the table or to each other."[28] Finally, the factual basis failed to establish "who transported the gun to the trailer or moved it to its position on the floor."  We concluded that the defendant's conviction could not be upheld under the "carry" prong of § 924(c)(1) because the facts showed only that the defendant "was present in the room when the officers entered and observed the firearm on the floor a few feet from the table."[29]

The facts in the instant case are similar yet differ in important particulars.  They show that Gonzalez and two other individuals were in a motel room when officers executed the arrest warrant for Gonzalez.  A handgun, which belonged to Gonzalez, and a quantity of heroin were located in plain view on a dresser in the motel room.  The handgun was "in close proximity to Gonzalez" and was "easily accessible" to him.

_____

[26]    Id. at 1162.

[27]    Id.

[28]    Id.

[29]    Although Hall seems to suggest that the "carry" prong of § 924(c)(1) requires only that the firearm be transported by the defendant **or** within the defendant's reach, see 110 F.3d at 1161, in Wainuskis we noted that "carrying" in a nonvehicle context requires both that the firearm be moved by the defendant **and** that it be within the defendant's reach.  See 138 F.3d at 187 & n.12.

10

As in <u>Hall</u>, there is no direct finding that Gonzalez moved or transported the handgun or that the handgun was within arm's reach. Still, as the facts clearly establish that the gun belonged to Gonzalez, a reasonable inference exists that he, as the owner, brought the gun to the motel room. Even though the facts do not conclusively rule out the possibility that one of the other two individuals brought the gun to the motel room, the fact of ownership, coupled with the proximity of the gun to Gonzalez and his statement that he thought about "going for it," go a long way towards distinguishing this case from <u>Hall</u>.

To distinguish Gonzalez's case from <u>Hall</u> further, the government states that Gonzalez, unlike the defendant in <u>Hall</u>, admitted that he carried a firearm during and in relation to his crime of possession of heroin with intent to distribute. The government relies on <u>United States v. Ramos-Rodriguez</u>,[30] in which agents discovered heroin, cocaine, and 14 guns throughout the defendant's house.[31] On appeal, we upheld the defendant's conviction under the "carry" prong because the defendant admitted in his factual resume that he had "carried" a firearm during and in relation to a drug trafficking offense.[32] The defendant also admitted that he had carried the firearms "in order to protect and guard" the drugs in his house and that he had carried the firearms

---

[30] 136 F.3d 465 (5th Cir.), <u>cert. denied</u>, 67 U.S.L.W. 3300 (U.S. Nov. 2, 1998) (No. 98-5114)).

[31] <u>Id</u>. at 467.

[32] <u>Id</u>. at 468.

"during and in relation to his possession" of the drugs.[33]  We rejected the defendant's argument that he was merely reciting the language of § 924(c)(1), reasoning that the word "carry" has a plain meaning outside of the statute.[34]  We also noted that there were no other statements in the factual resumé that conflicted with the defendant's admissions or that would cause a court to question his veracity.[35]  Based on the defendant's admissions, we were "satisfied that at some point during and in relation to th[e] drug trafficking crime, the firearms were within [the defendant's] reach, dominion or control and that he 'carried' the firearms pursuant to § 924(c)(1)." [36]

As the government points out, Gonzalez stipulated that he did "knowingly . . . carry" the firearm found in the motel room "during and in relation to" his crime of possession of heroin with intent to distribute.  As in Ramos-Rodriguez, the remaining admissions in the factual resume do not contradict that statement.  Rather, Gonzalez's admission that the firearm belonged to him bolsters that statement.  Gonzalez did not, however, specify how he used the firearm "during and in relation to" his drug trafficking offense.  Unlike the defendant in Ramos-Rodriguez, Gonzalez did not specify

---

[33]  Id.

[34]  Id.

[35]  Id.

[36]  Id. at 469; but see United States v. Gobert, 139 F.3d 436, 440 (5th Cir. 1998) (even though defendant admitted during the plea colloquy that he violated § 924(c)(1), factual basis was devoid of evidence that defendant or coconspirator used or carried a firearm in relation to the underlying drug offense).

12

that he had carried the firearm to protect his drugs. This difference is more than offset, however, by Gonzalez's statement that he almost went for the gun when the officers entered the room, a clear indication not only of his close proximity to the gun and nexus of the gun to the drug deal but, more importantly, that the purpose for which the gun — Gonzalez's gun — was transported to the room containing the drugs was to protect them and the traffickers, principally Gonzalez.

### III.

### CONCLUSION

Gonzalez's case is factually analogous to both <u>Hall</u> and <u>Ramos-Rodriquez</u>. Although <u>Hall</u> might seem to indicate that Gonzalez's guilty-plea conviction on the "carry" prong of § 924(c)(1) should be vacated, the instant facts place this case closer to the <u>Ramos-Rodriquez</u> situation, indicating that his conviction can and should be affirmed under the "carry" prong. When all facts, admissions, and inferences of this case are viewed <u>in</u> <u>pari</u> <u>materia</u>, the resulting picture is one that more closely resembles <u>Ramos-Rodriquez</u> than <u>Hall</u>, leading us to the conclusion — on an admittedly close call — that the district court's determination that Gonzalez "carried" the firearm is not clearly erroneous and is therefore AFFIRMED.

13